# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:                                                                                    Case No. 24-43115

Noel J. Smith,

        Debtor.                                                             Chapter 13

## ORDER CONVERTING CASE FROM CHAPTER 13 TO CHAPTER 7

      The Chapter 13 Trustee (the "Trustee") and creditor Ritalka Inc. move to dismiss or convert this case to chapter 7 due to the Debtor's bad faith in providing false photographs of his collector vehicles and his inability to confirm a plan. The Debtor did not initially file a written verified response to the motion, nor present responsive affidavits or exhibits under Local Rule 9013-1(b).

      The Court heard the motion on December 10, 2025.[1] The Debtor appeared pro se, indicating he did not oppose dismissal of the case but did not have a position on the conversion of the case.[2] Upon request by the movants, the Court permitted additional briefing for the parties to advocate a preference for conversion or dismissal, which neither party addressed in the initial motions. Each movant filed an additional brief by the deadline of December 18, 2025, requesting conversion. On December 22, 2025, the Court received a response from the Debtor, dated and signed December 17, 2025, which included a request for further continuance of the motion.

      For the reasons stated herein, the Court grants the motions by the Trustee and Ritalka and will convert the case to chapter 7. The Debtor's request for a further continuance is denied.

## JURISDICTION AND PROCEDURAL MATTERS

      The Court has jurisdiction over this matter under 28 U.S.C. § 1334. The Court can hear and determine this matter as a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O). This matter arises under 11 U.S.C. § 1307(c) and Federal Rule of Bankruptcy Procedure 1017 and is a contested matter under FED. R. BANKR. P. 9014. *See* FED. R. BANKR. P. 1017(f)(1).

      Reviewing the written record on a contested matter "is analogous" to the standard applied on a motion for summary judgment under Federal Rule of Civil Procedure 56, which requires a

---

[1] The undersigned took assignment of this case on November 21, 2025 due to recusal. The Court has reviewed prior pleadings and hearings that are relevant to the motions and has certified familiarity with the record under FED. R. CIV. P. 63, made applicable by FED. R. BANKR. P. 9028.

[2] At the hearing, the Debtor said he expected to retain counsel by December 15, 2025. No counsel has since appeared in the matter. The Debtor's original attorney withdrew with Court permission on August 8, 2025.

1

party opposing the motion to respond with "admissible, probative evidence that would permit a finding in its favor on more than speculation or conjecture." *See Hansmeier v. McDermott (In re Hansmeier)*, 558 B.R. 299, 301-302, fn. 7 (B.A.P. 8th Cir. 2016).

The affidavits and exhibits presented by movants appear unopposed in all material respects, even after considering the Debtor's post-hearing response. The Court therefore finds that it can decide this matter without convening an evidentiary hearing or taking any testimony under FED. R. BANKR. P. 9014(d).

## FACTS

1. The Debtor filed his chapter 13 bankruptcy petition on November 13, 2024.

2. There are 11 filed claims in the case totaling $153,640.00. Ritalka holds the largest claim of $103,324.03 arising from a prepetition judgment against the Debtor for unjust enrichment as a beneficiary of his spouse's embezzlement from Ritalka. *See* Claim No. 5-1. Of this claim, Ritalka asserts a secured component of $50,000.00, based on the docketing of the judgment against the Debtor's non-homestead rental real property at 206 South 9th Street, Montevideo, MN (the "Rental Property"). There are two other creditors with secured claims totaling $30,980.67, and eight remaining creditors holding unsecured claims totaling $19,335.30.

3. The Debtor's first plan filed with his petition proposed monthly payments of only $400.00, despite his Form 122C-2 Statement of Disposable Income showing disposable monthly income of $1,279.70. *Compare*, D.E. 7, and D.E. 1, 62-68. The Form 122C-2 did not identify any anticipated circumstances that would reduce his projected income.

4. Ritalka responded to the first plan on January 9, 2025, with three core objections:

    a. The plan did not list Ritalka as holding a secured claim.

    b. The plan failed the requirement under 11 U.S.C. § 1325(b)(1)(B) that "all of the debtor's projected disposable income...will be applied to make payments to unsecured creditors under the plan."

    c. The Debtor had undervalued two scheduled assets: a 1975 International Truck (the "1975 International") with a value of $5,000, and a 1987 Peterbilt Truck (the "1987 Peterbilt") with a value of $10,000. Ritalka stated that the Debtor had collector's plates on both trucks and that they were likely worth more than their scheduled value.

D.E. 13.

5. On January 10, 2025, Ritalka moved for relief from the automatic stay imposed by 11 U.S.C. § 362(a) to seek to enforce its judgment lien against the Rental Property.

6. On January 15, 2025, Ritalka and the Debtor stipulated to the denial of confirmation of the plan, requiring the Debtor to file a modified plan by February 14, 2025. D.E. 17. Based on the stipulation, the Court denied confirmation on January 17, 2025. D.E. 19.

7. On February 15, 2025, the Debtor filed his first modified plan, which increased the monthly payment to $450.00, and treated Ritalka as a partially secured creditor. D.E. 28.

8. Ritalka objected to the first modified plan on March 13, 2025, restating its objection to the monthly payment. D.E. 32. Ritalka further argued that the plan was not in the best interests of creditors because the total payments to unsecured creditors of $17,115.19 was less than the liquidation value of the Debtor's non-exempt property, which Ritalka calculated as $20,275.35. *See* 11 U.S.C. § 1325(a)(4) (providing that the value of the property distributed under a chapter 13 plan to unsecured creditors shall not be less than what creditors would receive in a hypothetical liquidation if the case proceeded under chapter 7 of the Bankruptcy Code). Ritalka's liquidation analysis adopted the Debtor's valuation of the collector trucks, though Ritalka restated that they remained undervalued.

9. Prior to the hearing on the first modified plan, the Debtor filed a second modified plan on April 15, 2025, delaying the confirmation hearing by an additional month. D.E. 42. The second modified plan retained the $450.00 monthly payment but increased the payments to unsecured creditors to $19,426.00. Ritalka again objected on May 13, 2025. D.E. 44. In addition to restating that its prior objections remained unresolved, Ritalka discovered that one of the liens securing the Debtor's non-exempt property had been overstated which increased the liquidation value of his non-exempt property to $24,764.80.

10. The Court held a confirmation hearing on May 19, 2025. At the hearing, the Debtor's counsel conceded that the plan would need to pay $24,764.80 to unsecured creditors to satisfy 11 U.S.C. § 1325(a)(4). The Court denied confirmation on May 19, 2025. D.E. 48.

11. The Debtor filed a third modified plan on June 10, 2025, which continued offering a monthly payment of $450.00, but proposed to make total payments to unsecured creditors of $24,765.19 through a lump sum payment of $8,500.00 at the end of the five-year plan. D.E. 52.

12. On June 19, 2025, the Debtor amended his Form 122C-2 to reduce his monthly disposable income to $219.32, retroactive to January 1, 2025, based on his reduction of work to half-time for cancer treatment. D.E. 58.[3] He did not amend the values of his collector vehicles.

13. On July 3, 2025, the Debtor and Ritalka jointly moved to approve a settlement as to Ritalka's stay relief motion as to the Rental Property. The parties agreed that the Debtor would sell the Rental Property at public auction by August 31, 2025, or thereafter surrender the property to Ritalka by quit claim deed. D.E. 64. The Debtor then filed a fourth modified plan with settlement as to the Rental Property attached. D.E. 66.

14. On July 11 and July 15, 2025, the Trustee and Ritalka each objected to the fourth modified plan based on additional information they discovered about his collector vehicles, which

---

[3] The reduction of income could implicate a feasibility objection to confirmation under 11 U.S.C. § 1325(a)(6) as the Debtor would lack the means to make his plan payments. The Debtor's delay in amending Form 122C-2 may have obscured this additional obstacle to confirmation and further prolonged his chapter 13 case.

3

in addition to the collector trucks also included a 1979 Chevrolet Camaro (the "1979 Camaro"). D.E. 68 and D.E. 69.

15. In his schedules, the Debtor did not identify the 1979 Camaro, which the Debtor intended to include among "various inoperable vehicles" that the Debtor valued at $0.00. D.E. 1, at ¶ 3. The Debtor disclosed to the Trustee at the meeting of creditors that the "various inoperable vehicles" included the 1979 Camaro. D.E. 68 at ¶ 3. The Debtor provided photographs of the 1979 Camaro to the Trustee on March 17, 2025, which indeed appeared to show an inoperable vehicle. The Trustee discussed the photographs at the confirmation hearing on May 19, 2025, and told the Court that the vehicle did appear inoperable as the Debtor had represented in the schedules.

16. On June 19, 2025, the Debtor provided Ritalka with twelve digital photographs of the 1975 International, 1987 Peterbilt, and 1979 Camaro. D.E. 69.

17. Upon further investigation, Ritalka then discovered that the photographs for the two trucks came from an online auction site, www.truckpaper.com, showing similar trucks in poor condition, but of different years and not owned by the Debtor. *Id.*, Ex. B, Ex. C, Ex. D, Ex. E. Ritalka further discovered photographs posted on Facebook referencing the Debtor displaying the 1975 International in June, 2025, at the American Truck Historical Society show in Madison, Wisconsin. *Id.*, Ex. G. The Facebook photographs show a truck with a vastly better exterior compared to the photographs of the 1975 International provided by the Debtor. Ritalka confirmed that the license plate visible on the Facebook photographs (761006) matched records from Minnesota's Department of Vehicle Services for the Debtor's 1975 International. *Id.*, Ex. H. In reviewing the photographs of the 1975 International, the Trustee concurred in his objection, on information and belief, that the 1975 International "is worth significantly more than $5,000.00." D.E. 68 at ¶ 2.

18. Ritalka and the Trustee further confirmed that the photographs provided by the Debtor for the 1979 Camaro were from a 2023 online auction listing on www.invaluable.com for a different Camaro located in Montana and not owned by the Debtor. *Id*. ¶ 3, Ex. C. The Trustee then scheduled an inspection for the 1979 Camaro with the Debtor to occur on July 10, 2025, only for the Debtor's spouse to cancel the inspection with the Trustee's representative in transit. Additionally, the Debtor did not provide information requested by the Trustee regarding any of the collector vehicles, including evidence of vehicle identification numbers or a video walkaround. *Id*.

19. The Debtor did not respond to the objections to the fourth modified plan, nor to the documentary evidence presented therein showing that he had attempted to present poorly-condition imposter vehicles as his own. The Court denied confirmation on July 17, 2025. D.E. 72. The Debtor has not proposed a new plan since denial of his fourth modified plan. The Court did approve the settlement as to the Rental Property and Ritalka's motion for relief from stay. D.E. 73.

20. The Trustee filed its present motion to dismiss or convert on September 10, 2025, and Ritalka filed its motion to dismiss or convert on September 18, 2025.[4]

---

[4] The Trustee and Ritalka had previously filed motions to dismiss or convert, which they subsequently withdrew, but these did not include the Debtor's bad faith as cause for relief.

4

21. Concurrent with its motion to dismiss or convert, Ritalka filed a motion for contempt to enforce its settlement with the Debtor after he failed to timely sell the Rental Property. D.E. 82. The contempt proceeding resulted in the Debtor delivering a quit claim deed to Ritalka for the Rental Property on or about October 27, 2025. D.E. 87 and 90. On November 12, 2025, the Court granted Ritalka relief from stay so that it could record the quit claim deed and take title to the Rental Property. D.E. 92. At the hearing on the motion to dismiss or convert, Ritalka confirmed it has recorded the quit claim deed, took possession of the Rental Property, and will promptly seek to sell the Rental Property, thereby recovering on account of its secured claim.

22. At the hearing on the motion to dismiss or convert, the Debtor acknowledged that he provided false photographs for the collector vehicles but suggested that his non-filing spouse in some fashion influenced the wrongful conduct.

23. The Debtor's post-hearing supplemental response, co-signed with his spouse, only vaguely addresses the photographs of the imposter vehicles, stating:

> While Noel explained the photos of the vehicles, not having taken due to being in poor health at the time, and it was not the correct avenue to proceed down, we believe that there has been misbehaving and Bullying (sic) on the portion of the opposing parties as well.

D.E. 100 at ¶ 5.

24. As to the pictures of the 1975 International, the Debtor indicated:

> [Ritalka's counsel], may have found a picture on the Internet of a truck taken to a show, but did not see that the truck was hauled there, winched off a trailer and is in the need of mechanical repairs. I believe that he stated at the last meeting that he cannot put a value on my assets, as it is a hard market. These items have outlived there (sic) work life, need engine overhauls and do not have value like is hoped for.

*Id.* at ¶ 6.

25. Approximately six months have passed since the Trustee and Ritalka first presented information regarding the vehicle photographs, and the Debtor has not amended his schedules to remedy these inaccuracies. It does not appear that the Debtor has provided any concrete information to the Trustee or Ritalka regarding the condition or value of these vehicles, nor cooperated in any respect towards an inspection.

26. The Court finds two other statements from Debtor's post-hearing response relevant: (1) he states that he anticipates being able to return to full-time work and that he could afford to make payments in a chapter 13 plan ranging from $1,500.00 to $1,700.00 per month and (2) that it appears that Ritalka has regularly garnished income of the Debtor's spouse to further recover on its judgment. *Id.* at ¶¶ 2-3.

**DISCUSSION**

Section 1307(c) of the Bankruptcy Code provides that a Court may for cause dismiss or convert a case to chapter 7, "whichever is in the best interests of creditors and the estate". Thus, in reviewing a motion to dismiss or convert, the Court must first determine if cause exists to remove the case from chapter 13 and then must decide whether dismissal or conversion is the best remedy for creditors and the estate.

**1. Cause Exists to Convert or Dismiss the Case.**

The Court finds that cause exists to convert or dismiss the case. Section 1307(c) enumerates a non-exhaustive list of eleven examples establishing cause. One of the enumerated factors that constitutes cause is "an unreasonable delay by the debtor that is prejudicial to creditors". 11 U.S.C. § 1307(c)(1).

The failure to timely confirm a plan after several attempts demonstrates an unreasonable delay prejudicial to creditors, particularly when the debtor's efforts appear dilatory during the confirmation process in repeatedly failing to address impediments to confirmation. *Paulsen v. Wein (In re Paulson)*, 477 B.R. 740, 745-46 (B.A.P. 8th Cir. 2012) (affirming that the debtor's "inability or refusal to propose a confirmable plan after several attempts and guidance from the court" supported dismissal of the case "due to unreasonable delay"); *In re Merhi*, 518 B.R. 705, 719 (Bankr. E.D. N.Y. 2014) (providing that dismissal is appropriate once it became apparent that the debtor did not have the means to pay the amounts necessary to confirm a plan). "A debtor's unjustified failure to expeditiously accomplish any task required either to propose or to confirm a chapter 13 plan may constitute cause for dismissal under § 1307(c)(1)." *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 915 (B.A.P. 9th Cir. 2011).

The record shows unreasonable delay prejudicial to creditors through the Debtor's prior inability to confirm a plan and the lack of any pending plan. The Debtor filed a total of five plans each of which took only incremental steps towards achieving a confirmable result, effectively prolonging the case to the prejudice of creditors. Every version of the plan contained flaws and unresolved issues—including whether the Debtor calculated his income contribution accurately, a recurring defect raised by Ritalka since the Debtor's first plan and not addressed until six months later when the Debtor amended his Form 122C-2.

The Court denied confirmation on July 17, 2025, and the Debtor has not since filed a new plan.[5] The Trustee filed his motion to dismiss on September 10, 2025, with Ritalka filing its motion

---

[5] The Court considered two other enumerated factors as cause under Section 1307(c)(3) for the "failure to file a plan timely under section 1321 of this title," and under Section 1307(c)(5) for the "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan." While the status of the case implicates these two factors, the record does not expressly align with the plain language of either. The order denying confirmation did not set a deadline for filing a modified plan. *Ellsworth*, 455 B.R. at 916 (finding cause under Section 1307(c)(3) where the debtors had not filed modified plan within 30-day deadline set by the court in prior order denying confirmation). Nor is there an order denying a request for additional time to file another plan or plan modification.

approximately one-week later. The Debtor has therefore had more than three months to find new bankruptcy counsel to respond to the motion and reconfigure any further efforts towards a chapter 13 plan confirmation.

Beyond the enumerated factors of Section 1307(c), the Eighth Circuit recognizes that cause also arises when a debtor files a chapter 13 case in bad faith. *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220 (8th Cir. 1996). Bad faith under Section 1307(c) considers the totality of the circumstances, including "(1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code." *Id*. at 220-21, *citing Handeen v. LaMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990).

In this case, the false information provided by the Debtor to Ritalka and the Trustee with respect to the collector vehicles constitutes bad faith. The movants demonstrated that the Debtor provided photographs of imposter vehicles instead of allowing an inspection as to his 1975 International, 1978 Peterbilt and 1979 Camaro. Ritalka located a picture of the 1975 International on Facebook attributed to Debtor showing a truck in vastly better condition than the false photographs provided by the Debtor. The Debtor has not contested the documentary evidence and acknowledged the false photographs at the hearing and in his written post-hearing response.

Riltaka objected to the scheduled values of the trucks in response to the initial plan. Since the filing of that initial objection nearly a year ago, the Debtor has failed to adequately address the undervaluation issue, correct or mitigate his statements, or provide any concrete information or facilitate inspection as to his collector vehicles.

In seeking to yet remain in chapter 13, the Debtor suggests in his post-hearing response that he will soon be able to propose a plan paying $1,500 to $1,700 per month, which is more than three times the $450.00 he had previously offered to pay. Given the totality of circumstances, affording the Debtor additional opportunities to propose payment plans in chapter 13 would likely only further prejudice his creditors. Because good faith is a required element of any plan confirmation process, the Debtor's history of operating in bad faith would remain a barrier against confirmation of any future modified plan proposal. *See* 11 U.S.C. § 1325(a)(3) (providing that a court can confirm a plan proposed only in good faith).

Thus, cause arises to dismiss or convert both under the enumerated circumstance in Section 1307(c)(1) and by the Debtor's bad faith in providing false information as to the collector vehicles.

**2. Conversion to Chapter 7 is in the Best Interests of the Creditors and the Estate.**

The Court finds that conversion to chapter 7 is in the best interests of the creditors and the estate. Under Section 1307(c), the bankruptcy court has the discretion to choose whether to dismiss or convert the case based on the best interests of the creditors and the estate. *Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 949-50 (B.A.P. 2nd Cir. 1998) (stating that Section 1307(c)'s use of the term "'may' indicates that the decision to dismiss or convert is committed to the discretion of the bankruptcy court").

Conversion is an appropriate remedy when a debtor has acted in bad faith. *In re Hopper*, 474 B.R. 872, 887 (Bankr. E.D. Ark. 2012) (finding that conversion rather than dismissal was in

best interest of creditors and estate, given potential fraudulent or preferential transfers that Chapter 7 trustee could investigate and possibly pursue), *citing Molitor*, 76 F.3d at 220 (affirming conversion of case for cause and relying on the bad faith finding against the debtor).

In addition, the presence of assets in the estate available for liquidation and distribution favors conversion over dismissal. *See In re Van Gompel*, 632 B.R. 730, 735-37 (Bankr. D.S.C. 2021) (choosing conversion where "assets are available to satisfy claims against the estate – which negates any benefit of dismissal.").

The Court should consider the preferences stated by creditors as they are the "'best judge of their own best interests,'" but the Court "must nevertheless make its own determination." *In re Brown*, 671 B.R. 461, 473-74 (Bankr. D. Md. 2025), *quoting* 7 COLLIER ON BANKRUPTCY, ¶ 1112.04 (16th ed. 2025). In doing so, the Court must also weigh whether the remaining creditors, even if in a passive posture, are more likely to recover in a conversion or dismissal. *In re Broughton*, 2015 WL 13854913, at \*\*13-14 (Bankr. E.D. N.C. 2015) (determining that conversion was the appropriate result because dismissal would likely only benefit secured creditors, whereas conversion provided an opportunity to maximize the value of the debtor's property for the benefit of all creditors).

The sum of these principles applied to the record favors conversion. Here, the Debtor owns at least three collector vehicles necessitating conversion and appointment of a chapter 7 trustee so that a full investigation and liquidation of property can occur. 11 U.S.C. § 704; *see also In re Wolfson,* 2023 WL 6970147, at \*11 (Bankr. S.D. Fla. 2023) (emphasizing the role of a chapter 7 to investigate the fraudulent concealment and conversion of assets by the debtors). In supporting conversion, Ritalka emphasizes that the Debtor's bad faith warrants the additional investigative remedies available in chapter 7, including is desire to pursue a denial of discharge remedy under 11 U.S.C. § 727 which would evaporate with a dismissal.[6]

Conversion also appears in the best interests of all unsecured creditors in the case. The Court concurs with the Trustee's belief that outside of bankruptcy, the prohibitive costs of collection would likely deter the remaining creditors, each holding much smaller claims than Ritalka's, from pursuing any recovery.

---

[6] The movants initially sought to dismiss this case with a filing bar of five years, a significant duration that approaches in function an outright denial of discharge under 11 U.S.C. § 727. The authorities cited by movants and otherwise located by the Court imposed filing bars to remedy and prevent serial bankruptcy filing and other obstructive litigation tactics, but the Debtor here has not filed any other recent bankruptcy case. *See In re Casse*, 198 F.3d 327, 337-39 (2d Cir. 1999) (collecting cases that have instituted filing bars on serial fliers and finding that a bankruptcy court has the power "to prohibit a serial filer from filing petitions for periods of time exceeding 180 days."); *In re Marshall*, 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009)(noting that "[c]ourts in this circuit have barred refiling to allow a creditor to exercise its rights under state law where serial filings abuse the bankruptcy process and cannot be prevented by an injunction under § 109(g)"); *In re Mehralian*, 2025 WL 1507572, at \*2 (Bankr. D. Minn. May 27, 2025) (imposing a filing bar where the debtor was a serial filer with 12 cases since 1995, and three of those cases in the previous three months). In any event, converting the case moots the request for a filing bar.

Conversion promotes equality in treatment among the remaining unsecured creditors. Ritalka has obtained a benefit in this bankruptcy on account of its secured claim in receiving a quit claim deed on the Rental Property that avoided the time and expense of state law foreclosure proceedings on its judicial lien. Ritalka appears to have additional sources to recover its claim through earnings garnishments of the Debtor's spouse, a co-debtor on the judgment. The Court finds that the remaining creditors should now receive the benefit of chapter 7's orderly and centralized liquidation process for the Debtor's remaining non-exempt property.

In his post-hearing response, the Debtor asserts that the collector vehicles have mechanical issues, suggesting that their liquidation value is not as high as Ritalka hopes. Even if the liquidation of the collector vehicles does not result in a 100% recovery to creditors, the Court nonetheless finds some recovery to creditors is likely in chapter 7, and that even a partial recovery is likely to exceed what his unsecured creditors would recover after a dismissal.

Finally, the Debtor's response argues that he disputes the amount of Ritalka's claim and demands an accounting. Section 704(a)(5) of the Code provides that a chapter 7 trustee shall, "if a purpose would be served, examine proofs of claim and object to the allowance of any claim that is improper," which is the same duty held to date by the Chapter 13 trustee. 11 U.S.C. § 1302(b)(1). Thus, conversion of the case will have no impact on the Debtor's ability to investigate or challenge the amount of Ritalka's claim, and the appointment of the chapter

Therefore, the Court finds that conversion of this case to a chapter 7 is in the best interests of all creditors and the estate.

IT IS ORDERED

1. The Chapter 13 Trustee's Motion to Dismiss or Convert [D.E. No. 84] is GRANTED
2. Ritalka Inc.'s Motion to Dismiss or Convert [D.E. No. 85] is GRANTED
3. This case will be converted to a chapter 7

Dated: *December 30, 2025*

s/ Mychal A. Bruggeman
Mychal A. Bruggeman
United States Bankruptcy Judge